IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| LARRY LEE LEMAY,<br>    Plaintiff,<br><br>v.<br><br>CORRECT CARE SOLUTIONS, et al.,<br>    Defendants. | Civil Action No. 3:19-cv-00683<br>Judge Richardson / Frensley |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION AND BACKGROUND

Pending before the Court is a partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro Government") and Davidson County Sheriff's Office ("DCSO") Officer Keyonna Alexander. Docket No. 84. Defendants have contemporaneously filed a supporting Memorandum of Law. Docket No. 85. Defendants, in the instant Motion and supporting Memorandum, seek dismissal of the only remaining claim against Officer Alexander; namely, that she allegedly did not inform medical staff that Plaintiff was not feeling well, and she did not later ask Plaintiff whether he was feeling better or worse. Docket Nos. 84, 85.[1]

Plaintiff, a pro se pre-trial detainee, filed his Amended Complaint in this action pursuant to 42 U.S.C. 1983 alleging that Defendant Alexander exhibited deliberate to Plaintiff's serious medical needs in violation of the Fourteenth Amendment, and further alleging that Metro Government bears municipal liability for violating his Fourteenth Amendment rights. Docket No. 58; *see also*, Docket No. 1. Specifically, Plaintiff avers in relevant part:

On June 28th, medical staff decided to disconnect and take away my insulin pump

---

[1] Defendants do not seek dismissal of Plaintiff's claims of inadequate medical care in this Motion. *See* Docket No. 84, n. 1.

> . . . . On June 29th at approximately 9 a.m. I was feeling very sick. I notified Officer Alexander, who stated she would tell medical when they came around for treatments. Officer Alexander never informed the medical staff. Upon going down to medical that afternoon, my blood sugar was over 540 mg, large amounts of ketones, so a Medcom call was made to transport me via ambulance to the hospital. I was admitted for Diabetic Ketoacidosis a life-threatening condition due to lack of insulin.

*Id.*

Plaintiff has filed two Responses to the instant Motion: the first, a Response to Defendant Alexander (Docket No. 95); and the second, a Response to Metro Government (Docket No. 97). In his Response in Opposition to Defendant Alexander's Motion to Dismiss, Plaintiff argues that Defendant Alexander improperly substituted her untrained opinion for that of medical staff when she failed to notify medical staff that Plaintiff did not feel well because she "thought Plaintiff looks like he felt better." Docket No. 95.

Plaintiff further argues that, although Defendant Alexander alleges that she was concerned with Plaintiff's health and well-being, Defendant Alexander was Plaintiff's housing officer that day and therefore could have, but did not, ask Plaintiff how he was feeling at any point during the day. *Id.* Plaintiff argues that this demonstrates that Defendant Alexander was actually "unconcerned" and inappropriately "relied upon her 'guessing' as a non-medical staff member." *Id.* Plaintiff notes that he informed Defendant Alexander that he was experiencing "weakness, dizziness, excessive thirst, excessive urination, pain, and rapid heartbeat & breathing" and he asserts that Defendant Alexander's failure to notify medical staff so they could come assess his condition resulted in his "continued paid and suffering while awaiting treatment," which constitutes "substantial harm, and states a claim." *Id.*

With regard to qualified immunity, Plaintiff argues that Defendant Alexander has a duty to report Plaintiff's medical needs to medical staff and because she "acted willfully & outside the scope of her employment, she could not have believed her actions to be lawful." *Id.* Plaintiff notes

2

that, even if Defendant Alexander thought her actions were lawful, the fact that she did not understand her actions were illegal does not shield her from liability. *Id.* Plaintiff therefore argues that Defendants' Motion should be denied. *Id.*

Turning to Plaintiff's Response in Opposition to Metro Government's partial Motion to Dismiss, Plaintiff incorporates by reference his arguments relating to Defendant Alexander, discussed above. Docket No. 97. With regard to Metro Government specifically, Plaintiff notes that he "does not attempt to hold Metro liable under a *respondeat superior* theory of liability, but rather, by their 'adoption of a 'custom' that violates federally protected rights.'" *Id.* In particular, Plaintiff argues that Defendant Metro Government "was clearly put on notice in 2011 that Plaintiff was experiencing deliberate indifference to Plaintiff's medical needs in regards [sic] to denial or delay of care relating to diabetes treatment. (Doc. 85, Exhibit C)." *Id.* Plaintiff continues, "Metro was aware of the claims against Wellpath, and the numerous accounts of being denied care, because Attorney Raybin set forth the events of those repeated denials of care in his letter to them." *Id.* Plaintiff argues that he can show that "delay & denial of medical care (especially in relation to Plaintiff's diabetes) has been a persistent pattern, notice or constructive notice has been given to Metro, and they have shown a tacit approval and failure to act, discipline, or train, and such inaction amounts to an official policy of inaction and the repeated policy or custom is long-standing over several years, and their inaction was related or closely related to a direct or casual [*sic*] link behind the injury." *Id.* Plaintiff contends that the "long-standing problem" of him receiving adequate diabetic care can amount to deliberate indifference and a municipal policy, such that municipal liability can be imposed. *Id.*

Defendants have filed a Reply, arguing that Plaintiff's Responses do not overcome the grounds for granting Defendant's Motion; namely, that: Defendant Alexander was not deliberately

3

indifferent to Plaintiff's medical needs; Defendant Alexander is entitled to qualified immunity; and no Metro Government policy or custom deprived Plaintiff of any constitutional right. Docket No. 98. Defendants argue that Plaintiff must allege that prison officials had a sufficiently culpable state of mind in denying medical care; they note that nowhere does Plaintiff assert that Defendant Alexander intended to harm him, and that Plaintiff concedes that medical staff, in fact, checked his blood sugar and tended to his needs later on the same day. *Id., citing* Docket No. 58, at 9-11. Defendants additionally note that Plaintiff does not allege that he was in obvious distress or insulin shock, but rather, alleges only that he was "feeling sick" and suffering invisible symptoms including weakness, dizziness, and a racing heart. *Id., citing* Docket No. 58 at 9. Defendants argue that Plaintiff has failed to plead sufficient facts for the Court to reasonably infer that Defendant Alexander's state of mind constituted deliberate indifference toward Plaintiff's medical needs such that this claim should be dismissed.

Defendants additionally Reply that Plaintiff's Responses do not sufficiently address Defendant Alexander's qualified immunity defense. *Id.* Specifically, Defendants argue that because Plaintiff has not adequately pled that Defendant Alexander was deliberately indifferent to his serious medical need, he cannot establish the required underlying constitutional violation, which is essential to establishing that Defendant Alexander is not entitled to qualified immunity. *Id., citing Burgess v. Fisher*, 735 F. 3d 462, 472 (6th Cir. 2013). Defendants further argue that Plaintiff has produced no authority to show that any clearly established right was violated, such that this Court should grant Defendant Alexander qualified immunity and dismiss all claims against her. *Id.*

With regard to municipal liability, Defendants Reply that Plaintiff's Responses merely restate the only allegation in his Amended Complaint that touches on a potential custom, practice,

4

or policy, which is that "Plaintiff has had several prior incidents with being booked into a Davidson County jail, insulin pump removed, and then emergency hospitalized . . . Metro was also put on notice of prior incidents from 2011." *Id., citing* Docket No. 58 at 11-12. Defendants note, however, that Plaintiff acknowledges that Wellpath – not Metro Government – is responsible for medical care at the facility where Plaintiff is incarcerated. *Id., citing* Docket No. 58 at 15. Defendants also Reply that Plaintiff supports his allegations with isolated incidents involving him only, which falls short of his burden to show a pattern that is so "well settled as to have the force of law." *Id.*

Finally, Defendants Reply that not only has Plaintiff failed to identify a policy or custom that violated his rights, but he has failed to connect any such policy to Metro Government by way of its employee Officer Alexander. *Id.* Defendants note that, accepting all of Plaintiff's allegations as true, at best, Defendant Alexander was negligent in failing to summon medical care as soon as Plaintiff informed her that he was not feeling well; however, Plaintiff has not alleged facts establishing that Defendant Alexander was aware of any problems with his medical care in the past, or that she knew of any policy or custom to deny him care, let alone that any policy or custom was applied to him through her actions or omissions. *Id.* Moreover, even if Plaintiff had properly pled that Defendant Alexander's actions were linked to a municipal policy or custom, she is not a policymaker and her actions cannot impart municipal liability. *Id., citing Miller v. Calhoun County*, 408 F. 3d 803, 813 (6th Cir. 2005)(for purposes of §1983 municipal liability, policymakers are determined by state law). Furthermore, Plaintiff has not alleged facts to suggest that such authority had been delegated to her by the Sheriff, or that Sheriff Hall was personally involved in his medical care so as to impart municipal liability such that the Court should dismiss all municipal liability claims against Defendant Metro Government. *Id.*

5

Case 3:19-cv-00683   Document 106   Filed 05/26/21   Page 5 of 12 PageID #: 689

## II. LAW AND ANALYSIS

### A. Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. at 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

B. **42 U.S.C. § 1983**

1. **Generally**

Plaintiff, a pre-trial detainee, alleges violations of his Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

C. **Eighth Amendment[2]**

1. **Generally**

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

---

[2] The protections of the Eighth Amendment are applicable to pre-trial detainees through the Fourteenth Amendment.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

### 2. Deliberate Indifference To Serious Medical Needs

The State has a constitutional obligation, under the Eighth Amendment (and Fourteenth), to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the

8

defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id*. (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988), *citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402, *citing Farmer v. Brennan*, 511 U.S. 825, 837, 844 (1994).

D. **Qualified Immunity**

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Qualified immunity generally shields government officials performing discretionary functions from liability

9

for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1983). The right at issue "must have been articulated with a significant degree of particularity," (*Eugene D. v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989), so that it is sufficiently clear to a reasonable official that his or her conduct would violate the right at issue. Qualified immunity is available as long as the official's actions "could reasonably have been thought consistent with the rights [he or she is] alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987).

The initial inquiry and threshold question, according to the Supreme Court, is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.*, *citing Siegert v. Gilley,* 500 U.S. 226, 232, 111 S. Ct. 1789, 1973, 114 L. Ed. 2d 277 (1991). If no constitutional right was violated, there is no necessity for further inquiry. *Id.*

A critical question is whether "any official in the defendants' position would understand that what he did violated those rights." *O'Brien v. City of Grand Rapids*, 23 F. 3d 990, 999 (6th Cir. 1994). Qualified immunity, therefore, "does not turn on the subjective good faith of the official; rather, it turns on the 'objective legal reasonableness' of his actions, assessed in light of the legal rules that were 'clearly established' at the time the actions were taken." *Id., quoting Harlow*, 457 U.S. at 818-19. "If officers of reasonable competence could disagree on whether the conduct violated the plaintiff's rights," qualified immunity will apply. *Id.*, *quoting Grossman v. Allen*, 950 F. 2d 338, 341 (6th Cir. 1991)(citations omitted).

### E. The Case At Bar

As discussed, Plaintiff alleges that Defendants violated his constitutional rights under

§1983. In order to state a claim under §1983, Plaintiff must first establish an underlying constitutional violation. Plaintiff has failed to do so.

Taking as true Plaintiff's allegations that he informed Defendant Alexander that he did not feel well and relayed to her his symptoms but she did not tell the medical staff and he did not see medical until later that day when they checked his blood sugar and sent him to the hospital, Plaintiff's allegations at best establish that Defendant Alexander may have been negligent in her handling of the situation. Significantly, not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth (or Fourteenth) Amendment. *Estelle,* 429 U.S. at 105. In fact, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state a claim for *deliberate* indifference. *Id.* at 105-06 (citations omitted). Because accidental, inadvertent, or negligent failure to provide adequate medical care does not state a claim under §1983, Plaintiff cannot sustain this claim, and Plaintiff's deliberate indifference claim against Defendant Alexander should be dismissed.

Turning to Plaintiff's §1983 municipal liability claim against Defendant Metro Government, there can be no municipal liability in the absence of an underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796 (1986); *Graham v. County of Washtenaw*, 358 F. 3d 377 (6th Cir. 2004). As discussed, because Defendant Alexander's conduct did not violate Plaintiff's constitutional rights, this claim should be dismissed as to Defendant Metro Government as well.

Moreover, even if Plaintiff had established an underlying constitutional violation, in order to prevail on his municipal liability claim, Plaintiff must specifically identify the municipality's allegedly unconstitutional policy, connect the policy to the municipality itself, and show that his particular injury was incurred because of the execution of that policy. *Garner v. Memphis Police*

11

Case 3:19-cv-00683   Document 106   Filed 05/26/21   Page 11 of 12 PageID #: 695

Dep't, 8 F. 3d 358, 364 (6th Cir. 1993). Plaintiff has simply failed to do so, and Plaintiff's §1983 municipal liability claim against Defendant Metro Government should be dismissed.

### III. CONCLUSION

For the reasons discussed above, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 84) be **GRANTED**. Specifically, the undersigned recommends that Plaintiff's deliberate indifference claim against Defendant Alexander be **DISMISSED WITH PREJUDICE**. The undersigned further recommends that Plaintiff's municipal liability claims against Defendant Metro Government likewise be **DISMISSED WITH PREJUDICE**.[3]

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

---

[3] No other claims are presently before the Court; accordingly, the undersigned expresses no recommendation herein with regard to the remainder of Plaintiff's claims proffered in the Amended Complaint.