IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LARRY LEE LEMAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:19-cv-00683 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| CORRECT CARE SOLUTIONS, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Pending before the Court is a Report and Recommendation ("R&R") from the Magistrate Judge recommending dismissal of claims against Defendant Officer Keyonna Alexander and Defendant Metropolitan Government of Nashville and Davidson County ("Metro Government.") (Doc. No. 106). The R&R was issued in response to Defendant Alexander's motion to dismiss and Defendant Metropolitan Government's partial motion to dismiss Plaintiff's Amended Complaint. (Doc. No. 84, "Motion"), to which Plaintiff filed two separate responses (Doc. Nos. 95 and 97, "Responses"). Plaintiff has filed Objections to the Magistrate Judge's Report and Recommendation (Doc. No. 114, "Objections"), and Defendants Alexander and Metro Government have filed a Response (Doc. No. 115).

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id*. Fed. R. Civ. P. 72(b)(2) provides that a party may file "specific written objections" to a report and recommendation, and Local Rule

72.02(a) provides that such objections must be written and must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made.[1]

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), the Court has reviewed *de novo* the Report and Recommendation, Plaintiff's Objections to the R&R, Defendants' Response, and the file.

## BACKGROUND

In this action, *pro se* Plaintiff Larry Lee Lemay filed an Amended Complaint (Doc. No. 58) alleging Defendants' deliberate indifference to and denial of necessary medical care in violation of the Fourteenth Amendment and Eighth Amendment,[2] 28 U.S.C. Sec. 1331(a), the Tennessee Constitution (at large), and "state tort claims under 28 U.S.C. Sec. 1367." (Doc. No. 58 at 6). Plaintiff brings these claims against Wellpath LLC and the Metropolitan Government of Nashville and Davidson County, in their official capacities, as well as individual defendants Kenneth Wilkins, Daron Hall, Keyonna Alexander, Pamela Hale, Mrs. Levy, and Mark Bailey. Plaintiff seeks damages (including punitive damages) and injunctive relief.

---

[1] The Local Rule also provides that any objections must be accompanied by sufficient documentation including, but not limited to, affidavits, pertinent exhibits, and if necessary, transcripts of the record to apprise the District Judge of the bases for the objections. Also, a separately filed supporting memorandum of law must accompany the objections. Local Rule 72.02(a).

[2] The Court notes that while Plaintiff's Amended Complaint states that Plaintiff brings claims under both the Eighth and Fourteenth Amendments, as a pre-trial detainee, Plaintiff's deliberate indifference claims technically fall under the purview of the Fourteenth Amendment. As discussed further below, however, the protections of the Eighth Amendment are embodied in the Fourteenth Amendment rights of pre-trial detainees and thus are substantively applicable to Plaintiff's Fourteenth Amendment claims.

The facts, as alleged by Plaintiff and accepted as true for purposes of the Motion to Dismiss, are sufficiently recited in the R&R and need not be repeated here in full. Plaintiff's claims arise from events which took place beginning in June of 2019 while Plaintiff was incarcerated at Hill Detention Center. Plaintiff alleges that Defendants removed Plaintiff's insulin pump and ignored Plaintiff's subsequent complaints regarding signs of high blood sugar and adverse medical symptoms including "weakness, dizziness, excessive thirst, excessive urination, pain, rapid heartbeat and rapid breathing." (Doc. No. 58 at 9). Plaintiff eventually was seen by medical staff, where it was discovered that "[his] blood sugar was over 540 mg, large amounts of ketones, so a Medcom call was made to transport [Plaintiff] via ambulance to the hospital. [Plaintiff] was admitted for Diabetic Ketoacidosis a life-threatening condition due to lack of insulin." (Doc. No. 58 at 9-11).

In the Amended Complaint, Plaintiff brought claims under 42 U.S.C. 1983 against numerous Defendants, alleging violation of his constitutional (namely, Eighth Amendment and Fourteenth Amendment) rights. Two Defendants, and certain kinds of claims, were dismissed by prior Orders of the Court (Doc. Nos. 34 and 83).[3] The claim against Defendant Alexander and the claim against Metro Government and were not dismissed, however.[4] Plaintiff alleges that

---

[3] Specifically, the Court first dismissed the claims against Sheriff Daron Hall in his individual capacity and the claim against the Davidson County Sheriff's Office. (Doc. No. 4). The Court thereafter dismissed the claims against Sheriff Daron Hall in his individual capacity, the claims related to a disciplinary action taken against Plaintiff in February 2020, and the claims of an inadequate law library. (Doc. No. 83). Numerous Defendants have not yet been served with process (as far as the docket indicates), and a Defendant identified by Plaintiff as Wellpath LLC has not been addressed in a prior Order and is not addressed herein either; the Court herein expresses no opinion about the merits or procedural posture of the claims against those Defendants, and leaves it to the Magistrate Judge to conduct case management of the remaining claims and Defendants as appropriate.

[4] Although the Amended Complaint purports to assert two counts, the Court cannot construe the Amended Complaint as asserting more than a single claim against each of these parties.

Defendant Alexander exhibited deliberate indifference to Plaintiff's serious medical needs in violation of the Fourteenth Amendment, and further alleges that Metro Government bears municipal liability for violating his Fourteenth Amendment rights.

Defendants' Motion seeks dismissal of Plaintiff's claim against Defendant Alexander and dismissal of Plaintiff's claim against Defendant Metro Government. The R&R recommends partial dismissal of the Amended Complaint. Plaintiff timely filed Objections to the R&R after properly seeking two extensions of time to file these objections. (Doc. No. 114). Defendants Alexander and Metro Government filed a Response to Plaintiff's Objections. (Doc. No. 115, "Response to Objections").

## DISCUSSION

Plaintiff raises objections to both: 1) the R&R's holding that Plaintiff failed to adequately allege that Defendant Alexander showed deliberate (rather than merely negligent) indifference to Plaintiff's medical needs; and 2) the R&R's holding that Plaintiff failed to adequately allege municipal liability as to Defendant Metro Government because "Defendant Alexander's [alleged] conduct did not violate Plaintiff's constitutional rights," and even if it did, Plaintiff failed to identify the specific allegedly unconstitutional policy which allegedly caused Plaintiff's injury. (Doc. No. 106 at 11). The Court reviews each of these holdings in the R&R *de novo*.

Claims Against Defendant Alexander

Defendants argue in their Motion that Plaintiff failed to plead facts that establish that Defendant Alexander intentionally denied or delayed Plaintiff's access to medical care for a serious medical need—thus failing to plausibly allege as required deliberateness "tantamount to intent to punish." (Doc. No. 85 at 4-5). Defendants emphasize that mere "medical negligence" is not enough; rather, the official must "know[] of and disregard[] an excessive risk to the inmate's

health or safety." (Doc. No. 85 at 6). The R&R agrees, concluding that "Plaintiff's allegations at best establish that Defendant Alexander may have been negligent in her handling of the situation," but this "accidental, inadvertent, or negligent failure to provide adequate medical care" is not enough to sustain a deliberate indifference claim against Defendant Alexander. (Doc. No. 106 at 11). Accordingly, the R&R recommends dismissal of Plaintiff's § 1983 claim against Defendant Alexander on the grounds that Plaintiff failed to plead facts sufficient to sustain a claim of deliberate indifference.

Opposing this recommendation, Plaintiff argues in his Objection that, as stated in the Amended Complaint, Plaintiff informed Officer Alexander that morning (at or before roughly 9:00 a.m.)[5] that he was experiencing serious adverse health symptoms including "weakness, dizziness, excessive thirst, excessive urination, pain, rapid heartbeat and rapid breathing" and informed her that his blood sugar "seemed very high." (Doc. No. 58 at 9). Yet, as alleged by Plaintiff, Alexander failed to inform "medical" (meaning, it seems clear, personnel at the detention facility responsible for the medical care and treatment of detainees) of these symptoms (despite telling Plaintiff that she would) and instead, Plaintiff was not seen by medical personnel until "7 to 8 hours later" during a routine blood-sugar check. (Doc. No. 114 at 2). It was during this routine blood-sugar check that it was discovered that Plaintiff was suffering from diabetic ketoacidosis and was rushed to the emergency room. (Doc. No. 58 at 9-11). Plaintiff cites several cases to support the argument that Officer Alexander failing to alert medical as to his need for immediate health treatment, resulting

---

[5] The Amended Complaint states that Plaintiff began experiencing symptoms at "around 8 AM" and that Plaintiff informed Officer Alexander of these symptoms "[b]y 9 AM or before." (Doc. No. 58 at 9). Plaintiff's Objections, however, imply that Plaintiff actually spoke with Officer Alexander regarding his symptoms at roughly 8:00 a.m. (Doc. No. 114 at 2). Because the Court is presented with a 12(b)(6) motion to dismiss, which requires the court to accept only those factual allegations pleaded in the *complaint*, the Court accepts as true Plaintiff's allegation in the Amended Complaint that he told Officer Alexander about his symptoms by or before 9:00 a.m.

in a delay of roughly eight hours in summoning medical care for a serious illness or injury, are sufficient to plead deliberate indifference.

The Court undertakes an independent analysis of whether the facts pleaded in the Amended Complaint, accepted as true, plausibly give rise to a cause of action for deliberate indifference under § 1983. On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

As a district court in this district recently and cogently summarized the interplay of these two constitutional amendments in the context of conditions of confinement, such as medical care:

> The Eighth Amendment Cruel and Unusual Punishment clause "places restraints on prison officials, who may not, for example, use excessive physical force against prisoners … [but it] also imposes duties on these officials, who must provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal citation omitted) (citations omitted). For example, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care...." *Id.* When a convicted prisoner sues under Section 1983, the Eighth Amendment provides the underlying constitutional basis; but as the Eight Amendment only applies after conviction, the Due Process Clause of the Fourteenth Amendment incorporates the Eight Amendment protections for pre-trial detainees, like the plaintiffs here. *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018). Consistently, courts have "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.' " *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).

*McRae v. Louisville-Jefferson Cty. Metro Gov't*, No. 319CV00313GNSCHL, 2020 WL 6389859, at *2 (W.D. Ky. Oct. 30, 2020). That is to say, "[t]he Fourteenth Amendment's Due Process Clause grants pretrial detainees a right to adequate medical treatment—a right analogous to the Eighth Amendment rights of prisoners." *Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005). Thus, the R&R was correct to note that "[t]he protections of the Eighth Amendment are applicable to pre-trial detainees through the Fourteenth Amendment." (Doc. No. 106 at 7 n.2). Thus, Plaintiff's right at issue can and herein will be referred to in terms of the Eighth Amendment, even though it is technically one under the Fourteenth Amendment because Plaintiff was a pre-trial detainee at the time in question.

Plaintiff's Eighth Amendment medical-care claim requires a plausible allegation of deliberate indifference to a serious medical need. *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017). Deliberate-indifference claims have both an objective and subjective component. The objective component requires that Plaintiff's chest pain and resulting collapse in his cell present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)—*i.e.*, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). The subjective component requires that Defendants understood yet consciously disregarded his need for medical treatment. *See Rhinehart*, 894 F.3d at 738. Deliberate indifference thus entails conduct that "amounted to more than ordinary negligence or medical malpractice." *Atkins v. Parker*, 972 F.3d 734, 739 (6th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). It has been described as "something approaching a total unconcern for [the inmate's] welfare in the face of

serious risks, or a conscious, culpable refusal to prevent harm." *Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (*quoting Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

Here, assuming the truth of Plaintiff's allegations as the Court must at this initial stage, Plaintiff's report to Defendant Alexander that he was experiencing "weakness, dizziness, excessive thirst, excessive urination, pain, rapid heartbeat and rapid breathing" and that his blood sugar "seemed very high," establishes a need for medical treatment that would be sufficiently obvious to a lay person to satisfy the objective component of his claim. *See, e.g. Garretson*, 407 F.3d at 797 (finding the objective prong met, even absent specific medical records verifying the detrimental effect of the delay, where an incarcerated diabetic did not promptly receive insulin after complaining of her need for treatment and was later admitted to the hospital). Moreover, Plaintiff's allegations that he told Defendant Alexander of his symptoms and that his blood sugar was high,[6] and that Defendant Alexander told Plaintiff that she would alert medical regarding Plaintiff's symptoms, is sufficient to establish a colorable claim as to her subjective culpability. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004) (finding that when defendants delay attending to a serious medical need for non-medical reasons, "their conduct in causing the delay creates the constitutional infirmity," as "the delay alone in providing medical care creates a substantial risk of serious harm.") Plaintiff alleges facts very similar to those involved in *Garretson*, in which the Sixth Circuit reversed the district court's grant of summary judgment to a named police officer (Altobelli and an unnamed police officer), reasoning:

> Garretson informed Altobelli at her booking that she required insulin for her condition and that she was past due for her current dose. Garretson contends that she informed the unnamed officer of her condition in detail when he escorted her to her holding cell. Both officers were allegedly aware of facts from which the

---

[6] Construing this allegation in Plaintiff's favor as required, the Court considers this as an allegation that Plaintiff told Defendant Alexander that his symptoms related to his being a diabetic with signs of high blood sugar.

inference of substantial risk of harm could be drawn. *See Blackmore,* 390 F.3d at 896; *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. Therefore, viewing these facts in the light most favorable to Garretson, we conclude that there is a genuine issue of material fact as to whether Altobelli and the unnamed officer acted with deliberate indifference to Garretson's medical needs.

407 F.3d at 798. *Garretson* is on point here in that Defendant Alexander, like officer Altobelli, was aware of facts from which the risk of substantial harm from excessive blood sugar levels could be drawn.

Defendant cites *Estelle v. Gamble*, 429 U.S. 97 (1976) as establishing the foundational legal rule for finding deliberate indifference to serious medical needs of prisoners. But *Estelle* holds only that the negligent or inadvertent failure to provide adequate medical care to an inmate falls short of meeting the deliberate indifference standard. Here, no alleged facts suggest that Defendant Alexander's failure to alert medical staff was inadvertent or accidental. Indeed, the allegations of the Amended Complaint suggest the opposite: Defendant Alexander told Plaintiff by or before roughly 9:00 a.m. that she would alert medical, and yet she intentionally decided not to do so as evidenced by her telling Plaintiff after an ambulance was called (only after Plaintiff was found to be suffering from diabetic ketoacidosis after his regularly scheduled 4:00 p.m. blood sugar test) that she had decided not to call medical because she thought Plaintiff "looked like [he] was feeling better" (despite never speaking to Plaintiff about whether he was, in fact, feeling better). (Doc. No. 58 at 11). Plaintiff has thus stated a cognizable claim against Defendant Alexander for deliberate indifference.

Defendant also moves to dismiss claims against Defendant Alexander on qualified immunity grounds. But because the R&R found there to be no constitutional violation, the R&R made no recommendation on the issue of qualified immunity, and thus Plaintiff had no reason to object to any qualified immunity findings. The undersigned therefore undertakes an analysis here

as to whether the claims against Defendant Alexander, although based on a sufficiently alleged constitutional violation, nonetheless should be dismissed under the doctrine of qualified immunity. "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016). To survive the motion to dismiss on qualified immunity grounds, the plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The plaintiff also must allege with particularity "facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (internal citations, quotation marks, and emphasis omitted). "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Heyne*, 655 F.3d at 562-63.

In analyzing the issue of qualified immunity, the "first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin*, 712 F.3d at 957 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Although these two steps may be addressed in any order, both steps must be answered in the affirmative for the plaintiff's claim to proceed. *Id*. (*citing Pearson*, 555 U.S. at 236). If either step is not satisfied, then qualified immunity shields the government officer from civil damages.

*Id*. The plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Garretson*, 407 F.3d at 798.

As discussed above, Plaintiff has pleaded facts sufficient to make a cognizable constitutional claim for a violation of § 1983 due to Defendant Alexander's alleged deliberate indifference to Plaintiff's medical need. The first prong of the qualified immunity inquiry is thus met.

Plaintiff also pleads facts sufficient to meet the second prong of the qualified immunity analysis. As noted above, a constitutional right is deemed "clearly established" as of the time of its alleged violation if "the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin*, 712 F.3d at 957. In other words, the right is clearly established if the defendant reasonably should have known that his or her alleged conduct violated it. Notably, and as touched on in somewhat more detail below, the question of whether the right is clearly established is one of law for the Court. *See Smith v. City of Troy, Ohio*, 874 F.3d 938, 944 (6th Cir. 2017). Describing this inquiry in more detail, the Supreme Court has explained:

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson, 555 U.S. at 231] (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. ——, ——, 132 S. Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L.Ed.2d 1149 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986).
> 
> "We have repeatedly told courts … not to define clearly established law at a high level of generality." *al–Kidd, supra*, at 742, 131 S. Ct. 2074. The dispositive question is "whether the violative nature of particular conduct is clearly established." *Ibid*. (emphasis added). This inquiry " 'must be undertaken in light of

the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

*Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015). As indicated in *Mullenix,* "[w]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action ... assessed in light of the legal rules that were clearly established at the time it was taken." *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1094 (6th Cir.1992) (internal citations and quotations omitted). Unlike many other cases, *Smith* indicates (correctly, in the Court's view) that the "clearly established" prong requires the resolution of two different (albeit related) questions:

> Whether the right alleged to have been violated is clearly established and whether the official reasonably could have believed that his conduct was consistent with that right are questions of law for the court. But if genuine issues of material fact exist as to whether the official committed acts that would violate a clearly established right, then dismissal of the claim is improper. When a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. In order to deny public officials qualified immunity, existing precedent must have placed the statutory or constitutional question beyond debate.

*Smith*, 874 F.3d at 944. The plaintiff needs to show that the answer to the first question is "yes" and the answer to the second is "no." *Smith* was decided in the summary-judgment context, but the Court can translate its teachings about the second prong of the qualified immunity inquiry into the motion-to-dismiss context: (1) the court must ask both (a) whether the right alleged to have been violated is clearly established and, if so, (b) whether the official reasonably could have believed that his conduct was consistent with that right; (2) both of these questions are questions of law for the court; at (3) at the motion-to-dismiss stage, the plaintiff must allege facts that, under existing precedent, would establish beyond debate that the answer to the two questions are "yes" and "no," respectively.

In the instant case, the Amended Complaint makes clear that the right it implicates, *i.e.*, the right allegedly violated, is a pre-trial detainee's right to adequate medical care. The Sixth Circuit has held that "where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process." *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir.1972). The right of a prisoner to medical treatment for a serious medical need "has been established since at least 1987." *Est. of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005) (*citing Heflin v. Stewart County*, 958 F.2d 709, 717 (6th Cir.1992)). The Sixth Circuit has held that "where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process." *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir.1972). The right of a prisoner to medical treatment for a serious medical need "has been established since at least 1987" and so such right, allegedly violated by the officer "was therefore clearly established." *Est. of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005) (*citing Heflin v. Stewart County*, 958 F.2d 709, 717 (6th Cir.1992)). And so there is no question that the right allegedly violated in this case was clearly established at the time of Defendant Alexander's alleged actions (or inactions) in June 2019.

That leads to the second question, *i.e.*, whether Plaintiff has met his burden of alleging facts sufficiently suggesting that Defendant Alexander unquestionably should have known that her (in)actions in failing to notify medical personnel promptly (or, for that matter, at all) after Plaintiff, a diabetic pre-trial detainee, complained of serious health symptoms would violate Plaintiff's Eighth Amendment right to adequate medical care. The Sixth Circuit has answered that question in the affirmative under a factual scenario very similar to the present case, *i.e.*, where an officer failed to notify medical personnel promptly after a diabetic detainee complained of serious health

symptoms. In *Garretson*, in reversing the district court's grant of qualified immunity, the court found that the evidence was sufficient not just to prove facts that would establish a violation of a constitutional right that was clearly established, but also to show that the officers could not reasonably have understood that their actions would have complied with that right. *See* 407 F.3d at 798 (noting that plaintiff Garretson needed to show that "the officers' behavior during her detention violated a right so clearly established that they reasonably should have understood their affirmative duties to act otherwise[,]" then finding that plaintiff Garretson had done so). In reaching this conclusion, the court explained:

> Both Altobelli and the unnamed officer appear to have violated clearly established law. They knew that Garretson was an insulin-dependent diabetic who was past due for treatment. And, they arguably denied her insulin by either not seeking medical help for her or failing to transfer her to a location where she could receive treatment after she notified them of her immediate health needs.

*Id.* (citation omitted). The same result applies in this case, with its very similar alleged facts.

The Report and Recommendation thus will not be adopted as to claims against Defendant Alexander, and Plaintiff's claims against Defendant Alexander may proceed.

Claims Against Metro Government

Plaintiff also objects to the R&R's recommendation to grant Defendants' motion to dismiss Plaintiff's claim against Defendant Metro Government. The R&R's recommendation to dismiss such claim is based primarily on the recommendation that no constitutional violation be found, but alternatively on the grounds that Plaintiff failed to "specifically identify the municipality's allegedly unconstitutional policy, connect the policy to the municipality itself, and show that his particular injury was incurred because of the execution of that policy." (Doc. No. 106 at 11). Plaintiff's objection to this holding rests on two arguments: 1) that Defendant Metro Government "cannot escape liability merely because they contract out the medical care to a third party provider,

Wellpath LLC," and 2) that Defendant Metro Government was aware of prior incidents of Plaintiff "not receiving adequate medical care as pertaining to [his] diabetes," thus creating an alleged "custom of deficient medical care to the Plaintiff's serious medical need." (Doc. No. 114 at 7).

While a municipality is considered a "state actor" subject to suit under 42 U.S.C. § 1983, a municipality cannot be held responsible for an alleged constitutional deprivation unless there is a direct causal link between a policy or custom of the municipality and the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To state a claim against a municipality, a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citations omitted). In this case, Plaintiff has not attempted to identify a policy or show how he was injured as the result of the execution of any such policy. At best, the Court might consider Plaintiff's claim that Defendant Metro Government had—or, "must have had," which is what Plaintiff really means—a "custom" of providing Plaintiff with deficient medical care inasmuch as its prior failures involving the management of his diabetes to be an argument that Defendant Metro Government has a policy of depriving diabetic inmates of sufficient medical treatment. But Plaintiff's claims, which are specific only to him and which lack sufficient detail to show that Defendant Metro Government had some sort of overall custom regarding insufficiently responding to diabetic inmates' medical requests, fall short of establishing an actual policy on the part of the municipality for purposes of liability under 42 U.S.C. § 1983. Plaintiff's theory of a "custom" or "policy" is based solely on the rank, and entirely unsound, speculation that if something happened or did not happen in his case, it must be the result of some policy. This flawed conjecture is insufficient to make his theory of a policy plausibly, as required under *Iqbal* and *Twombly* for him to state a claim for municipal liability.

Because Plaintiff fails to state a claim against Defendant Metro Government, the R&R is adopted and approved as to Plaintiff's claims against Defendant Metro Government, which will be dismissed.

## CONCLUSION

For the reasons discussed herein, the Magistrate Judge's Report and Recommendation (Doc. No. 106) regarding the Motion (Doc. No. 84) will be ADOPTED IN PART and NOT ADOPTED IN PART. Specifically, the Court will adopt the recommendation to dismiss the claim against Defendant Metro Government, and that claim will be dismissed, and the Clerk will be DIRECTED to terminate Defendant Metro Government as a party. However, the Court will reject the recommendation to dismiss the claim against Defendant Alexander, and such claim will survive for further development.

The Court notes that this resolution of the R&R means that the Court will DENY IN PART AND GRANT IN PART the Motion. Specifically, the Court will grant the Motion to the extent that it requests dismissal of Plaintiff's claim against Defendant Metro Government and deny the Motion to the extent that it requests dismissal of Plaintiff's claim against Defendant Alexander.[7]

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[7] The Court notes, as did the R&R, that it is not addressing at this time any claims or Defendants not within the scope of the Motion.